**NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.**

In the Supreme Court of Georgia

Decided: August 12, 2025

S25Y0537, S25Y0538. IN THE MATTER OF DOMINIQUE MARC HENRI LEMOINE.

PER CURIAM.

These disciplinary matters are before the Court on the consolidated report and recommendation of the State Disciplinary Review Board ("Review Board"), which reviewed the report and recommendation of Special Master Charles David Jones involving Dominique Marc Henri Lemoine (State Bar No. 446455), who has been a member of the State Bar since 1998, pursuant to Bar Rules 4-214, 4-215, and 4-216. The Review Board adopted the Special Master's factual findings, conclusions of law, and recommendation that Lemoine be disbarred from the practice of law for his violations of Rules 1.2(a), 1.3, 1.4(a), 1.15(I)(a), 1.15(I)(c), 1.15(II)(a), 1.15(II)(c)(1)(i), 1.15(III)(a), and 8.4(a)(4) of the Georgia Rules of

Professional Conduct ("GRPC" or "Rules") found in Bar Rule 4-102(d) in two separate matters. The maximum penalty for a violation of Rules 1.2(a), 1.3, 1.15(I)(a), 1.15(I)(c), 1.15(II)(a), 1.15(III)(a), and 8.4(a)(4) is disbarment, while the maximum penalty for a violation of Rules 1.4(a) and 1.15(II)(c)(1)(i) is a public reprimand. Lemoine filed in this Court exceptions to the Review Board's report, in which he challenges many of the Special Master's factual findings; asserts that the Special Master ignored his mental state and that, when taking this into account, no sanction higher than a suspension should be imposed; and argues, in the alternative, that the State Bar's formal complaints be dismissed pursuant to *In the Matter of Brown*, 319 Ga. 465 (2024), because, according to Lemoine, his conduct from which the violations arose was not in connection with the legal representation of a client. The State Bar responded, stating that the overwhelming evidence shows that Lemoine violated the Rules with which he was charged, that he was acting in connection with the legal representation of a client in both matters, and that Lemoine should be disbarred.

Upon careful consideration of the record, we conclude that Lemoine's exceptions to the Review Board's report and recommendation are without merit, and disbarment from the practice of law is the appropriate sanction.

1. *Procedural History*

(a) *S25Y0537*

In June 2022, the State Bar filed a formal complaint alleging that Lemoine failed to properly maintain funds that he held in a fiduciary capacity while representing a client and improperly used such funds to reimburse other clients and for personal use. As such, the State Bar charged Lemoine with violations of Rules 1.15(I)(a) (lawyer shall hold funds or other property of clients or third persons that are in a lawyer's possession in connection with a representation separate from the lawyer's own funds); 1.15(II)(a) (requiring lawyer to maintain a trust account and all funds held for a client or in any other fiduciary capacity be deposited in a trust account); 1.15(II)(c)(1)(i) (requiring client funds to be placed in an interest-bearing account with the interest being paid to the Georgia Bar

foundation or client and providing that no earnings from such an interest-bearing account shall be made available to a lawyer or law firm); 1.15(III)(a) (requiring lawyer to maintain a trust account separate from any business or personal accounts); and Rule 8.4(a)(4) (it is a violation of the Rules for a lawyer to engage in professional conduct involving dishonesty, fraud, deceit, or misrepresentation). Lemoine acknowledged service of the complaint and filed his answer, in which he denied all Rule violations but admitted some of the State Bar's factual allegations. The State Bar then filed a motion seeking summary judgment regarding the violations of Rules 1.15(I)(a), 1.15(II)(a), 1.15(II)(c)(1)(i), and 1.15(III)(a). Upon reviewing Lemoine's answers to the State Bar's several interrogatories and requests for admissions, Lemoine's deposition testimony, the several bank statements introduced into evidence, and both parties' arguments, the Special Master granted summary judgment on the Rule 1.15(I)(a) violation—finding that the evidence undisputedly showed that Lemoine failed to hold funds owed to a third party separate from his own funds in connection to his legal

4

representation of a client—but denied summary judgment on the other counts.

(b) *S25Y0538*

In January 2023, the State Bar filed a second formal complaint charging Lemoine with violations of Rules 1.2(a) (lawyer shall abide by a client's decisions concerning the scope and objectives of representation and shall consult with the client as to the means by which they are to be pursued); 1.3 (lawyer shall act with reasonable diligence and promptness in representing a client); 1.4(a) (lawyer shall keep the client reasonably informed about the status of the matter and promptly comply with reasonable requests for information); 1.15(I)(a); 1.15(I)(c) (lawyer shall promptly deliver to the client any funds that the client is entitled to receive); 1.15(II)(a); 1.15(II)(c)(1)(i); and 8.4(a)(4) in a separate client matter. The State Bar alleged that Lemoine failed to properly maintain funds he held for his clients by commingling the clients' funds with his own, improperly used client funds to reimburse other clients and for his personal use, and failed to comply with the clients' request for their

5

money back. Lemoine acknowledged service of the complaint and filed his answer, in which he again denied all Rule violations but admitted some of the State Bar's factual allegations. The State Bar then filed a motion seeking summary judgment regarding the violations of 1.15(I)(a), 1.15(I)(c), 1.15(II)(a), and 1.15(II)(c)(1)(i). Upon reviewing the evidence and arguments presented by both parties, the Special Master granted summary judgment on the Rules 1.15(I)(a) and 1.15(I)(c) violations—finding that the evidence undisputedly showed that Lemoine failed to hold funds owed to his clients separate from his own and failed to promptly deliver funds owed to his clients—but denied summary judgment on the other counts. The Special Master then scheduled a consolidated evidentiary hearing on the remaining counts for both matters and, following the evidentiary hearing, issued his report and recommendation.

2. *Special Master's Report and Recommendation*

(a) *Factual Findings*

(i) *S25Y0537*

The Special Master recounted that in 2020, Lemoine became a lawyer for a limited liability company engaged in facilitating and securing transactions involving personal protective equipment (the "LLC"). In August 2020, a consultant for the LLC worked with a seller and a buyer to facilitate a large sale of surgical gloves. The buyer was hesitant to send money directly to the seller, so the LLC's owner asked Lemoine if his IOLTA account could be used for the transaction. The buyer agreed to Lemoine's acting as the escrow agent because Lemoine was an attorney and because the funds would be transmitted through Lemoine's "attorney escrow account." The LLC prepared the invoice for the sale of thousands of boxes of surgical gloves, which listed Lemoine's IOLTA account as the account where the funds were to be sent. On September 1, 2020, the buyer emailed Lemoine and requested that he not disburse any funds until the goods were inspected; Lemoine acknowledged the request and told the buyer that the funds would be released after validation and transmission of the surgical gloves. On September 2, the buyer wired approximately $222,400 into Lemoine's account.

After the buyer wired the funds to the account, the LLC instructed Lemoine to disburse 40% to the seller and, despite his prior agreement with the buyer not to disburse any funds until the goods were inspected, Lemoine wired $63,360 to the seller. At the LLC's direction, Lemoine also made three payments totaling $17,200 from the wired funds to the LLC's consultant for her work on the transaction.

On September 28, 2020, the buyer received the goods, determined that they were not what he ordered, sent an email to Lemoine notifying him that the products were not compliant, and asked him not to disburse the funds in his account. On that same day, Lemoine responded to acknowledge that he had received this email. In October 2020, the buyer emailed Lemoine several times requesting his money back. Lemoine sent the seller a letter, stating that he was the LLC's attorney and demanding return of the $63,360. Lemoine also responded to the buyer, informing the buyer that he would return the funds by October 31, 2020. Lemoine failed to return any portion of the buyer's funds by this date.

In early November 2020, the buyer emailed Lemoine that he had not received the funds. Lemoine responded that he had already sent the funds back, and upon the buyer's request, sent a copy of a wire transfer purporting to show that he had wired the buyer $132,483.40. However, Lemoine did not send that wire transfer. And, although he told the buyer that he would send the funds, Lemoine was aware that this would not be possible given the fact that there was not enough money in the IOLTA account, as the balance in the account was only $102,293.32 at this time. In late November 2020, the buyer retained two lawyers to assist him with getting his money back. Around this same time, Lemoine sent the buyer a payment for $33,120.85—almost two months after the buyer first requested that the funds be returned. Lemoine then made a second payment of $20,000 to the buyer in December 2020. Shortly thereafter, one of the buyer's lawyers requested that Lemoine return the rest of the funds and provide a complete accounting of the funds. Lemoine failed to provide an accounting of the funds but told the lawyer that he was fully committed to seeing all the funds returned

9

before the end of January. However, Lemoine did not return any additional funds until May 2021, at which time he made a third wire transfer for $79,362.55. Lemoine failed to make any further payments.

Further, the Special Master found that the account Lemoine used in the transaction was not properly constituted as an IOLTA account because it did not contain the Tax ID number for the Georgia Bar Foundation, nor was it an interest-bearing account with the interest paid to a client. And, although Lemoine claimed that he told the bank to designate the account as an IOLTA account, he admitted during the evidentiary hearing that he did nothing to ensure that the interest was going to the Georgia Bar Foundation and he acknowledged that the Tax ID Number associated with the account is the Tax ID Number for Lemoine's law firm. The Special Master also noted that the evidence showed that Lemoine moved money back and forth from this account and his two operating accounts, and he testified during the evidentiary hearing that he used the buyer's funds to pay other clients and third parties as well

10

as his own personal expenses. Moreover, the Special Master found that, although Lemoine asserted that he did not represent anyone in the transaction, the evidence—including his own actions and testimony—demonstrated that he was acting as the LLC's lawyer, which was an intermediary in the transaction.

(ii) *S25Y0538*

As for the second matter, the Special Master recounted that in April 2021, Lemoine was retained by two elderly French citizens who do not reside in the United States—a husband and wife (collectively, the "Clients")—to represent them in a tax dispute with the IRS. Lemoine informed the Clients that the IRS could seize money they maintained in their accounts and advised them to transfer funds to him to maintain in another one of his IOLTA accounts.[1] The Clients wired $175,000 into Lemoine's IOLTA account to be used, among other things, to pay any IRS penalties and for Lemoine's attorney fees. In May 2021, Lemoine transferred

---

[1] The Special Master found that this account was a properly constituted IOLTA account.

$115,000 of the $175,000 from the IOLTA account to his operating account. On this same day, Lemoine transferred $80,000 of the Clients' money to the improperly constituted IOLTA account used for the surgical glove transaction in an attempt to reimburse the buyer. Throughout the month, Lemoine used the Clients' funds to reimburse other clients, as admitted by Lemoine in his deposition. By the end of May, the balance in Lemoine's IOLTA account was $98.73, and the balance in Lemoine's operating account to which he transferred the Clients' funds was -$62.75.

Regarding the IRS dispute, Lemoine requested a penalty abatement, which the IRS denied in November 2021. Lemoine filed an appeal but did not communicate with the Clients about the matter. The Clients ended up resolving the IRS dispute themselves in November 2023.

Additionally, in November 2021, while Lemoine was representing the Clients in the IRS dispute, they requested that Lemoine use a portion of the $175,000 they had wired to his account

to pay the property taxes on a home they owned in Florida.[2] The Clients sent Lemoine a copy of a tax bill they had received and requested that he use their funds to pay the property tax bill as soon as possible to avoid a late fee. Lemoine did not abide by the Clients' directive to use the funds they had wired to him to pay the property taxes and did not explain to them why he did not do so. Between November 2021 and January 2022, the Clients asked Lemoine on four occasions to wire them $30,000 from the funds they had sent him so that they could pay for certain utilities and expenses associated with the Florida property and continued to request that he pay the property taxes. In mid-January 2020, after the Clients' fourth request, Lemoine transferred $5,000 from his operating account to the IOLTA account, and then sent the Clients $5,000 from the IOLTA account, without explaining why he did not send them the entire $30,000 that they had requested. The Clients sent

---

[2] During his deposition, Lemoine testified that the Clients had specifically hired him to represent them in the IRS dispute and that their request that Lemoine use the money they had wired to him in relation to the IRS dispute to pay the property taxes on their Florida home "wasn't discussed at the time" he was retained.

Lemoine an email acknowledging receipt of the $5,000, requesting that he send the remainder of the $30,000, and renewing their request for Lemoine to use the funds they had wired in relation to the IRS dispute to pay the property taxes. Lemoine responded, sending them a copy of a check dated January 14, 2022, for $5,615.63 made payable to the county tax collector, which led the Clients to believe that Lemoine had paid the property taxes. And, although Lemoine contended that he sent the check, he also acknowledged that he only had $60.57 in the account at this time, that the check was never debited from the account, and that he provided no evidence that he sent the check. In his response, Lemoine also informed the Clients that they should receive another transfer, which led the Clients to believe that he had sent them the remainder of the requested funds. However, he never did so and, as a result, the Clients had to sell personal property and borrow money from friends to pay the maintenance expenses on their Florida home.

In late January 2022, the wife emailed Lemoine, informing him that her husband was hospitalized and requesting that he

immediately send her the balance of the funds in his possession after deducting his attorney fees. Lemoine did not respond. On that same day, a Florida attorney emailed Lemoine, informing Lemoine that he had been contacted by the Clients and requesting the return of the funds and an accounting of the funds. In February 2022, Lemoine emailed the attorney an accounting ledger and invoice, and told the attorney that once the Clients approved the invoice, he would transfer the balance of their funds. Around the same time that the Clients received this invoice, they became aware that Lemoine had still not paid the property taxes, and their Florida attorney requested a conference call. During this call, Lemoine failed to explain why he had not paid the property taxes, but he "committed to sending a new check to the [county tax collector], to sending a final invoice to the [Clients,] and to return the balance of the funds." On March 11, 2022, Lemoine wrote a check for the property tax bill, which was marked as paid on March 16, 2022— almost four months after the Clients had first requested him to do

15

so. And, because Lemoine failed to timely pay the property taxes, the Clients incurred late payment penalties.

In December 2023, shortly before the evidentiary hearings, Lemoine contacted the Florida attorney regarding making payments that he owed the Clients and sent two wire transfers for $1,000. However, despite telling the Clients and the Florida attorney that he would return the remainder of the funds owed, he did not do so and has still not returned the funds.

(b) *Rule Violations*

(i) *S25Y0537*

Based on the factual findings, the Special Master concluded that, in addition to violating Rule 1.15(I)(a) (as the Special Master had already granted the State Bar summary judgment as to this count), Lemoine violated Rules 1.15(II)(a) by depositing client and fiduciary funds into an improperly constituted trust account; 1.15(II)(c)(1)(i) by maintaining an IOLTA account with the interest not disbursed to a client or the Georgia Bar Foundation, noting that Lemoine set up the account such that the interest went to his law

firm; 1.15(III)(a) by failing to maintain a trust account separate from his business and personal accounts and using his IOLTA account for multiple purposes including for his personal expenses; and 8.4(a)(4) by misrepresenting to the buyer that he had wired funds when he did not do so, fraudulently converting the buyer's funds to pay other clients and for his personal expenses, and allowing the buyer to be misled into believing that his funds were being wired into a properly constituted IOLTA account.

(ii) *S25Y0538*

Based on the factual findings, the Special Master concluded that, in addition to violating Rule 1.15(I)(a) and 1.15(I)(c) (as the Special Master had already granted the State Bar summary judgment as to these counts), Lemoine violated Rules 1.2(a) by failing to consult with the Clients about the developments in their IRS case and failing to abide by the Clients' decisions on how to disburse their funds; 1.3 by failing to timely use the funds they had wired to Lemoine in relation to the IRS matter to pay the tax collector as they had requested; 1.4(a) by failing to respond to the

Clients' requests regarding how to disburse their funds and failing to provide honest, reasonable, and necessary communication regarding the Clients' funds; 1.15(II)(a) by depositing client funds into an improperly constituted trust account, as he transferred the Clients' funds into the improperly constituted IOLTA account he used for the glove transaction; 1.15(II)(c)(1)(i) by maintaining an IOLTA account with the interest not disbursed to a client or the Georgia Bar Foundation; and 8.4(a)(4) by misrepresenting to the Clients that he had sent the payment to the county tax collector when he never sent the check and knew that he had insufficient funds to provide the payment.

(c) *ABA Standards*

After finding that Lemoine violated the provisions of the GRPC with which he was charged in both disciplinary matters, the Special Master applied the framework set out in the *ABA Standards for Imposing Lawyer Sanctions* (1992) ("ABA Standards"), which provide that, when imposing a sanction, "a court should consider the following factors: (a) the duty violated; (b) the lawyer's mental state;

18

(c) the potential or actual injury caused by the lawyer's misconduct; and (d) the existence of aggravating or mitigating factors." ABA Standard 3.0. Regarding S25Y0537, the Special Master determined that Lemoine had a duty to preserve the funds in a properly constituted trust account and had not only failed to deposit the funds in a proper account but failed to safeguard the funds. Regarding S25Y0538, the Special Master determined that Lemoine had a duty to communicate and consult with the Clients, diligently perform the services that he had been hired to perform, and preserve his Clients' funds, but had failed to meet these obligations. In assessing Lemoine's mental state, the Special Master determined that Lemoine's actions were knowing rather than inadvertent or negligent. Specifically, the Special Master determined that Lemoine was "acutely aware" that he was converting client and fiduciary funds for his own use or to pay others, as he testified at the evidentiary hearing that he used money that did not belong to him to fill a "hole" that had been created by his own conduct in not monitoring his bank account and used these funds to pay the client

19

"that screams the loudest." Further, Lemoine knowingly disregarded the Clients' direction to return their money. In assessing the injury caused, the Special Master determined that the Clients, who were elderly and vulnerable, suffered significant harm and had to sell other property to satisfy financial obligations due to Lemoine stealing their money, and that Lemoine caused harm to the legal system and profession by converting hundreds of thousands of dollars that did not belong to him.

As for aggravating circumstances, the Special Master determined that the following factors set forth in ABA Standard 9.22 applied: dishonest or selfish motive; a pattern of misconduct; multiple offenses; vulnerability of the victim; and substantial experience in the practice of law. See ABA Standard 9.22(b), (c), (d), (h), and (i). Additionally, the Special Master concluded that, out of the 13 mitigating factors set forth in ABA Standard 9.32, only one applied, as before these two matters, Lemoine had no prior discipline history. See ABA Standard 9.32(a).

(d) *Recommended Discipline*

20

The Special Master then concluded that given the Rules violated and significant aggravating factors, disbarment is the appropriate discipline for Lemoine's conduct, noting that "[Lemoine's] conduct was dishonest, it was constant, and it was harmful." In making this recommendation, the Special Master relied on several cases in which this Court has imposed disbarment for similar rule violations. See *In the Matter of Sicay-Perrow*, 310 Ga. 855 (2021) (disbarment for lawyer who violated Rules 1.15(I)(a) and (c), 1.15(II)(a) and (b), and 8.4(a)(4)); *In the Matter of Turner*, 311 Ga. 204 (2021) (disbarment for lawyer who violated Rules 1.3, 1.4(a), 1.15(I)(c), 1.15(II), 1.15(III), 8.4(a)(4), and 9.3 in two matters); *In the Matter of Cheatham*, 304 Ga. 645 (2018) (disbarment for lawyer who violated Rules 1.3, 1.4(a), 1.15(I)(a) and (c), 1.15(II)(a) and (b), 5.5(a), and 8.4(a)(4)).

3. *The Review Board's Report and Recommendation*

Lemoine filed exceptions to the Special Master's report and recommendation, as well as a motion to dismiss the State Bar's formal complaints. In addition to challenging many of the Special

21

Master's factual findings, Lemoine argued that the State Bar's allegations were barred by *Brown*—which was issued after the Special Master's report and recommendation—in which this Court held that Rules 1.15(I)(c) and 1.15(II)(b) "do not apply to lawyers when they are acting as fiduciaries not in connection with the legal representation of a client or otherwise in the practice of law." 319 Ga. at 466. The Review Board rejected this argument, concluding that *Brown* is distinguishable because Brown was acting solely as a fiduciary and was not practicing law, whereas, in these matters, the Special Master specifically found that Lemoine was retained as the LLC's attorney, which was an intermediary in the transaction, and by the Clients. The Review Board then adopted the Special Master's factual findings and conclusions of law and recommended that Lemoine be disbarred for his violations of the GRPC provisions.

4. *Lemoine's Exceptions*

Lemoine filed exceptions to the Review Board's report, arguing that the Special Master failed to consider all the evidence which, if fully examined, shows that the State Bar failed to establish by clear

and convincing evidence that Lemoine violated the Rules with which he was charged. Lemoine also contends that the Special Master erred by failing to consider his mental state which, when taken into account, demonstrates that he should receive a sanction no higher than a suspension. Additionally, Lemoine argues in the alternative that the State Bar's formal complaints should be dismissed under *Brown* because, according to Lemoine, his conduct in both matters was not connected to the representation of a client or the practice of law. As explained in our analysis section below, we reject Lemoine's arguments.

5. *Analysis*

(a) First, Lemoine challenges the Special Master's factual findings in both disciplinary matters, arguing that the Special Master ignored several facts which, if fully examined, show that the State Bar failed to prove by clear and convincing evidence that Lemoine violated the Rules with which he was charged. Specifically, as for S25Y0537, Lemoine argues that the Special Master failed to consider that he directed the bank to designate the account to which

23

the buyer wired the funds as an IOLTA account; that he commingled fiduciary funds with his own and used fiduciary funds to compensate other clients because he was "targeted by scammers," which left a deficit in his account; that he never used fiduciary funds for personal use; that there was no evidence that he allowed the LLC to use his status as a lawyer to receive the fiduciary funds; and that he was required by contract to wire 40% of the buyer's funds to the seller. As for S25Y0538, Lemoine argues that the Clients never stated that they were unsatisfied with Lemoine's communication regarding the IRS matter or that they hired another lawyer due to Lemoine failing to respond to their requests, and that he did not intentionally steal the Clients' money and had always intended to pay them back.[3]

However, this Court has explained that "the special master is in the best position to determine the witnesses' credibility," and that it "generally defers to the factual findings and credibility determinations made by the special master unless those findings or

---

[3] Lemoine also repeats his assertion that the Special Master failed to consider the fraudulent activity regarding his IOLTA account.

determinations are clearly erroneous." *In the Matter of Tuggle*, 317 Ga. 255, 258 (2023) (citations omitted). Here, the Special Master considered the evidence, and, upon our review of the record, we conclude that his subsequent findings and determinations are not clearly erroneous. Regarding Lemoine's assertion that the Special Master failed to consider that he directed the bank to designate the account to which the buyer wired the funds as an IOLTA account, the Special Master explicitly considered this assertion in his report and recommendation and explained that Lemoine admitted during the evidentiary hearing that he did nothing to ensure that the account was properly set up and that the Tax ID Number Lemoine provided for the account was the Tax ID Number for Lemoine's law firm, rather than for the Georgia Bar Foundation. Further, we have explained that even inadvertent violations of the Rules relating to trust accounts are subject to discipline. See *In the Matter of Howard*, 292 Ga. 413, 414 (2013) ("a trust account is a high honor and privilege afforded to a member of the Bar, so even a technical

violation should have public discipline so as to protect clients, courts, and the public").

Additionally, the record shows that the Special Master considered Lemoine's claim that he commingled client and fiduciary funds with his own and used fiduciary funds to compensate other clients because he was "targeted by scammers," and found that any fraudulent issues with Lemoine's account was created by his own conduct in failing to monitor the account. Lemoine testified that he received and deposited into his IOLTA account a "fake check" received from a client in the amount of $140,092 and then disbursed funds from his account before realizing he had been given "a bad check," such that "a hole of $140,000 in [his] IOLTA account" was created. However, during the evidentiary hearing, in response to counsel for the State Bar asking Lemoine how long it took for him to notice the deficit in his account, Lemoine replied "five or six months." Further, Lemoine admitted that he was "[n]ot always" looking at his IOLTA account on a monthly basis, and that, upon his contacting the client who delivered the fake check after several

26

months, the client had "disappeared." See *Tuggle*, 317 Ga. at 258 (noting this Court's authority to rely on undisputed material facts, even when not contained in the Special Master's report).

Additionally, the record supports the Special Master's finding that Lemoine used fiduciary funds for his personal use, as during his deposition testimony, when Lemoine was asked about several transfers he made from his IOLTA account containing the buyer's funds to his operating account, he stated that he did not remember what those transfers were for or why he had made them, but that the transfers had been authorized and he had not used client or fiduciary funds for his own personal use. Yet, later during his deposition, Lemoine testified that only "some" of the transfers from the IOLTA account were authorized and that he was "defrauded by a crook" and "in the meantime, [he] still ha[s] to eat." Thus, based on this testimony, the Special Master was authorized to infer that Lemoine used the funds for his own personal expenses and livelihood.

Regarding Lemoine's assertion that there is no evidence that he allowed the LLC to use his status as a lawyer to receive the fiduciary funds, a review of the transcript from the evidentiary hearing reveals that the buyer testified that he agreed to the transaction with the LLC only because Lemoine was a lawyer; that "[he] never would have done the deal" otherwise; and that, when he sent the money to what he believed to be an attorney escrow account, he thought it was guaranteed that his funds would be released only upon giving Lemoine confirmation to do so.

Regarding Lemoine's assertion that the Special Master failed to consider that he was required by contract to wire 40% of the buyer's funds to the seller, we note that the Special Master was entitled to discredit Lemoine's claim, as the buyer testified at the evidentiary hearing that, although this was customary practice when conducting an international transaction with a factory, the seller in this case was a company with which he was not familiar such that he would not have agreed to this initial 40% payment. Moreover, regardless of whether Lemoine was required to wire 40%

28

of the buyer's funds, we note that the Special Master found that by November 2020, the balance in the IOLTA account in which Lemoine was holding the buyer's initially wired $222,400 was only $102,293.32, and that Lemoine had testified during the evidentiary hearing that he improperly used the buyer's funds to pay other clients and third parties. Further, the Special Master's determination that Lemoine's conduct in this disciplinary matter violated Rules 1.15(I)(a), 1.15(II)(a), 1.15(II)(c)(1)(i), 1.15(III)(a), and Rule 8.4(a)(4) did not hinge on this 40% transfer.

As for S25Y0538, the Special Master was authorized to find that Lemoine did not adequately communicate with the Clients regarding the IRS matter and that they hired another lawyer due to Lemoine's failure to respond to their requests. The wife testified at the evidentiary hearing that Lemoine would send them copies of documents that he sent to the IRS but they did "not have a lot of communications" about what those documents meant; that she began receiving correspondence from the IRS through her accountant because Lemoine "never sent [the Clients] the answers

29

… that the IRS would give him" regarding their case; and that she realized she "could no longer have trust in [Lemoine]" based on his failure to communicate with the Clients.

Regarding Lemoine's assertion that the Special Master disregarded Lemoine's testimony that he did not intentionally steal the Clients' money and had always intended to pay them back, again, we determine that the Special Master's finding is supported by the record. The wife testified at the evidentiary hearing that the Clients have still not received all the funds they originally transferred to Lemoine and that, from the original $175,000 they transferred, he still owed them $146,217.63. Moreover, during cross-examination, Lemoine admitted that he owed the Clients "$146,000 and something" and, when asked if he believed that his failure to refund the Clients' money is inconsistent with his obligations as a lawyer, he responded "Yes, it is, of course." Accordingly, this enumeration of error fails.

(b) Additionally, Lemoine asserts that the Special Master failed to consider his mental state and, when taking this into

account, he should receive a sanction no higher than a suspension. However, this is not an accurate statement, as the record shows that the Special Master considered the evidence in its entirety and found that Lemoine acted knowingly in intentionally converting the fiduciary funds for an improper use, as he admitted to using these funds to pay back other clients and his own living expenses, and intentionally misleading the buyer and his Clients that he would return their funds when he was aware that he did not have enough money in his accounts to do so, as he had already converted these funds for other uses. Further, although Lemoine contends that he should receive a sanction no higher than a suspension, he does not cite any authority to support such a sanction. And the cases cited by the Special Master—*Turner, Sicay-Perrow,* and *Cheatham*—support the recommendation of disbarment. Accordingly, this enumeration of error fails.

(c) Alternatively, Lemoine argues that he cannot be found to have violated the Rules with which he was charged in either matter pursuant to *Brown,* in which we held that Rules 1.15(I)(c) and

1.15(II)(b) (providing that no personal funds shall ever be deposited in a lawyer's trust account) do not apply to lawyers when they are acting as fiduciaries not in connection with the legal representation of a client or otherwise in the practice of law. See 319 Ga. at 466. According to Lemoine, he was not acting in connection with the legal representation of a client because he did not represent the LLC during the surgical glove transaction and the funds that the Clients wired to him were unrelated to the IRS matter for which he was hired.

However, although the Special Master's report was issued prior to *Brown*, the Special Master specifically found that the LLC served as an intermediary in the transaction and that Lemoine acted as the LLC's attorney during this time, as he held himself out as the LLC's attorney to the buyer and seller and both the LLC's owner and consultant testified to such. And the fact that Lemoine did not represent the buyer does not mean that his actions were not in connection with the legal representation of a client. See *In the Matter of McDonald*, 319 Ga. 197, 206–08 (2024) (attorney violated

Rules with which she was charged where attorney was "acting in her capacity as a lawyer in connection with [a] transaction," received money from a third party "into her escrow account in a 'fiduciary capacity,'" and commingled the funds that she received and failed to keep and maintain records of the trust account used for the transaction). Cf. *Brown*, 319 Ga. at 466 (attorney could not be found to have violated Rules 1.15(I)(c) and 1.15(II)(b) where attorney "was contacted and asked if she would consider acting as successor trustee for the Trusts, and she agreed to do so for a fee in her 'individual capacity,' rather than as a lawyer"). The Special Master also specifically found that Lemoine was hired by the Clients to represent them in the IRS matter; that he advised the Clients to wire him money from their accounts so that the funds could not be seized by the IRS; that based on Lemoine's advice, the Clients wired him $175,000; and that the Clients later made requests regarding how Lemoine disburse these funds, including paying their property taxes and wiring them money so that they could pay for certain utilities and expenses associated with their home. Thus, while

Lemoine was initially retained to represent the Clients in their dispute with the IRS, his conduct in failing to disburse the Clients' funds as directed is clearly connected with the legal representation of a client. Accordingly, this enumeration of error fails.

Therefore, after considering the record, we agree with the Special Master that disbarment is the appropriate sanction in this matter and that this sanction is consistent with prior cases disbarring lawyers for similar conduct. See *In the Matter of Raines*, 319 Ga. 820 (2024) (disbarring attorney for violations of Rules 1.15(I)(a), 1.15(I)(b), 1.15(I)(c), and 1.15(II)(b) where attorney failed to safeguard client funds, disregarded the interests of third parties in the settlement funds, failed to promptly deliver the funds owed to the clients and third parties, and converted the funds for personal use); *In the Matter of Doeve*, 303 Ga. 672 (2018) (disbarring attorney for violations of Rules 1.15(I), 1.15(II), 1.15(III)(b)(2), and 8.4(a)(4) where attorney agreed to act as an escrow agent, received funds from an investor in connection with his client's transaction, disbursed the investor's funds without approval, failed to communicate with the

34

investor about the status of the funds, repeatedly issued insufficient-funds checks to those involved in the transaction, and misled those involved in the transaction about when they could expect to be paid). Accordingly, it is hereby ordered that the name of Dominique Marc Henri Lemoine be removed from the rolls of persons authorized to practice law in the State of Georgia. Lemoine is reminded of his duties under Bar Rule 4-219(b).

*Disbarred. All the Justices concur, except Land, J., not participating.*